UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| FRANCIS P. GAFFNEY, JR., | : |
| Plaintiff, | : |
| | : |
| v. | : Case No. 3:16-cv-01392 (SRU) |
| | : |
| BRIAN PERELMUTER, et al., | : |
| Defendants. | : |

## **RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

The plaintiff, Francis P. Gaffney, Jr. ("Gaffney"), is currently incarcerated at Cheshire Correctional Institution, in Cheshire, Connecticut. He initiated this action by filing a complaint *pro se* pursuant to 42 U.S.C. § 1983 against Dr. Brian Perelmuter and Dental Assistant Yvonne Borchert.

On August 17, 2016, the court concluded that Gaffney had not asserted facts to show that either defendant was aware that Gaffney would suffer serious harm as a result of their actions and dismissed the complaint regarding both defendants, without prejudice. *See* IRO, [ECF No. 10] at 4-5. The court informed Gaffney that he could move to reopen the case and file an amended complaint provided he could allege facts to satisfy the subjective prong of the Eighth Amendment's deliberate indifference standard. *See id.* at 5.

On September 7, 2016, Gaffney moved to file an amended complaint. *See* Motion to Amend/Correct Complaint [ECF No. 14]. On September 12, 2016, the court denied Gaffney's motion to amend because the proposed amended complaint did not cure the deficiencies in the complaint and directed the Clerk to treat the motion as a notice of appeal of the dismissal of the complaint. *See* Order [ECF No. 15]. On February 6, 2017, the Court of Appeals for the Second

Circuit dismissed the appeal of the dismissal of the claims against Dental Assistant Borchert because the appeal lacked an arguable legal or factual basis, vacated the judgment regarding Dr. Perelmuter and remanded the case back to this court for further proceedings to enable Dr. Perelmuter to file an answer or motion in response to the complaint. *See* Mandate [ECF No. 18].

Dr. Perelmuter filed an answer to the complaint on May 15, 2017. Pending before the court is Dr. Perelmuter's motion for summary judgment. For the reasons set forth below, the motion is granted.

## I. Standard of Review

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of proving that no factual issues exist. *See Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010). A fact is "material" if it "might affect the outcome of the suit under the governing law," and is "genuine" if "a reasonable jury could return a verdict for the nonmoving party" based on it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

When a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the nonmoving party must do more than vaguely assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (citation omitted). Thus, the party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.*

In reviewing the record, the court must "construe the evidence in the light most favorable to the non-moving party and to draw all reasonable inferences in its favor." *Gary Friedrich Enters., L.L.C. v. Marvel Characters, Inc.*, 716 F.3d 302, 312 (2d Cir. 2013) (citation omitted). The court may not, however, "make credibility determinations or weigh the evidence. . . . [because] [c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Proctor v. LeClaire*, 846 F.3d 597, 607–08 (2d Cir. 2017) (internal quotation marks and citations omitted). If there is any evidence in the record from which a reasonable factual inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, however, summary judgment is improper. *See Security Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

Where one party is proceeding *pro se*, the court reads the *pro se* party's papers liberally and interprets them "to raise the strongest arguments that they suggest." *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015) (internal quotation marks and citation omitted). Despite this liberal interpretation, however, allegations unsupported by admissible evidence "do not create a material issue of fact" and cannot overcome a properly supported motion for summary judgment. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

## II. Facts[1]

Dr. Perelmuter has been licensed to practice dentistry since 2006. Perelmuter Decl. ¶ 3 [ECF No. 34-3]. As of May 8, 2015, Gaffney was confined at Cheshire and Dr. Perelmuter was the assigned dentist at Cheshire. *See id.* ¶ 5. On that date, Dr. Perelmuter examined Gaffney's teeth in response to Gaffney's complaint of pain in tooth number three, a molar located on the right side of his upper jaw ("molar number three"). Def.'s L.R. 56(a)1 ¶ 1 [ECF No. 34-2]. Dr. Perelmuter ordered bite-wing x-rays of molar number three. *Id.* ¶ 2. The x-rays did not reveal a crack in the molar or any other condition that would cause the pain experienced by Gaffney. Perelmuter Decl. ¶ 8 [ECF No. 34-3]. Dr. Perelmuter noted that Gaffney was likely experiencing inflammation from his sinuses. *Id.* Dr. Perelmuter recommended extraction of molar number

---

[1] The relevant facts are taken from Dr. Perelmuter's Local Rule 56(a)1 Statement ("Def.'s L.R. 56(a)1") [ECF No. 34-2], to the extent that those facts are supported by admissible evidence set forth in the Exhibits, [ECF Nos. 34-3, 34-4], attached to the Local Rule 56(a)1 Statement, and not controverted by Gaffney's Local Rule 56(a)2 Statement. Local Rule 56(b) requires a counseled party who moves for summary judgment to file and serve "a Notice to Self-Represented Litigant Concerning Motion for Summary Judgment" on the *pro se* party against whom summary judgment is sought. D. Conn. L. Civ. R. 56(b). The form of the Notice, which is set forth in Local Rule 56(b), should be accompanied by copies of the full text of Federal Rule of Civil Procedure 56 and Local Rule of Civil Procedure 56. *See id.* Although counsel for the defendant filed a Notice to Self-Represented Litigant Concerning Motion for Summary Judgment with his motion, the notice is not accompanied by a copy of D. Conn. L. Civ. R. 56. *See* Def.'s Mot. Summ. J., [ECF No. 34] at 3-6. The court notes that the denials in Gaffney's Local Rule 56(a)2 Statement ("Pl.'s L.R. 56(a)2") [ECF No. 39] do not include citations to either (1) the affidavit of a witness competent to testify at trial, or (2) other evidence that would be admissible at trial, as required by Local Rule 56(a)3. Because Gaffney proceeds *pro se* and the defendants did not send him a copy of Local Rule 56, the court will consider the evidence submitted by Gaffney in support of his opposition to the motion for summary judgment, Gaffney's Declaration, [ECF No. 39] and Medical Records, [ECF No. 40], as filed in support of Gaffney's Local Rule 56(a)2 Statement, to the extent that the evidence supports the statements. The court also considers the allegations from the Complaint, [ECF No. 1], and its exhibits, as a declaration because the Complaint is subscribed as true under penalty of perjury. *See* 28 U.S.C.A. § 1746; *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002) ("'A verified complaint is to be treated as an affidavit for summary judgment purposes.'") (citation omitted).

4

three, but Gaffney refused to consent to the extraction. *Id.* ¶ 6; Ex. 2 [ECF No. 34-4], at 2 (Refusal of Health Services Form).

On June 16, 2015, Dr. Perelmuter spoke to Gaffney about molar number three. Def.'s L.R. 56(a)1 ¶ 7 [ECF No. 34-2]. On June 23, 2015, Gaffney reported to the dental department and signed a consent form with regard to the extraction of molar number three because he was experiencing severe pain in that molar. Def.'s L.R. 56(a)1 ¶ 8 [ECF No. 34-2]; Ex. 2 [ECF No. 34-4] at 3 (Oral Surgery Consent and Identification Form); Pl.'s L.R. 56(a)2 ¶ 8 [ECF No. 39]. After Gaffney signed the consent form, Dr. Perelmuter performed the extraction. Def.'s L.R. 56(a)1 ¶ 9 [ECF No. 34-2]. Dr. Perelmuter used two sutures in the area where molar number three had been extracted. *Id.* On June 30, 2015, Dr. Perelmuter removed the sutures from the area where he had extracted molar number three. *Id.* ¶ 10.

On July 28, 2015, Gaffney submitted an Inmate Request to the dental department claiming that Dr. Perelmuter had permanently attached the inside of his cheek to his gum line in the area where Dr. Perelmuter had extracted molar number three, and that the right side of his face, including the area around his nose and lip, was numb. Gaffney Decl., ¶ 18 [ECF No. 39] at 14; Medical Records [ECF No. 40] at 1. On July 31, 2015, in response to Gaffney's complaint that it felt like the inside of his cheek had been attached to his gum line, Dr. Perelmuter used a scalpel to release the attachment to Gaffney's cheek in the area where the number three molar had been extracted. Def.'s L.R. 56(a)1 ¶ 11 [ECF No. 34-2]; Pl.'s L.R. 56(a)2 ¶ 11 [ECF No. 39]; Medical Records [ECF No. 40], at 1 (Inmate Request dated July 28, 2015). On August 7, 2015, in response to Gaffney's complaint that the area on the inside of his cheek still felt like it

was attached to his gum line, Dr. Perelmuter again used a scalpel to release the attachment near the area where molar number three had been extracted. Def.'s L.R. 56(a)1 ¶ 12 [ECF No. 34-2]; Gaffney Decl., ¶¶ 23 [ECF No. 39].

On December 15, 2015, Gaffney submitted an Inmate Request to the medical/dental department complaining that Dr. Perelmuter had unsuccessfully attempted to alleviate the sensation that felt like the inside of his cheek was attached to his gum line, that his right cheek area still felt numb and that he was feeling the same tooth pain that he had experienced prior to the extraction of molar number three. Pl.'s L.R. 56(a)2 ¶ 13 [ECF No. 39]; Medical Records [ECF No. 40] at 2-3 (Inmate Request dated December 15, 2015). Dr. Perelmuter's examination of Gaffney reflected that the extraction area had healed and that the attachments between the inside of Gaffney's right cheek and his gum line were evenly released. Def.'s L.R. 56(a)1 ¶ 13 [ECF No. 34-2].

On December 18, 2015, Dr. Perelmuter submitted a request to the Utilization Review Committee to approve a consultation with a specialist to address Gaffney's complaints of numbness in the right side of his cheek. Def.'s L.R. 56(a)1 ¶ 13 [ECF No. 34-2]; Ex. 2 [ECF No. 34-4] at 5. On December 21, 2015, the URC responded to the request and concluded that "[n]o treatment was indicated. . . . [and that] [i]n the absence of any apparent cause for the numbness Mr. Gaffney claimed, only time would resolve." *Id.* ¶ 14; Ex. 2 [ECF No. 34-4] at 5.

On February 11, 2016, Gaffney submitted an Inmate Request Form to the medical department regarding his concerns about the method used by Dr. Perelmuter to extract molar number three, the fact that Dr. Perelmuter had only partially alleviated the sensation that the inside of his cheek was attached to his gum line and that he was still experiencing numbness in

his right cheek. Def.'s L.R. 56(a)1 ¶ 16 [ECF No. 34-2]; Exs. to Compl., [ECF No. 1-1] at 20. In response to this request, the dental department scheduled an appointment for Gaffney with a new dentist at Cheshire named Dr. Bruce Lichtenstein. Def.'s L.R. 56(a)1 ¶ 17 [ECF No. 34-2]; Exs. to Compl., [ECF No. 1-1] at 20, 53.

On February 16, 2016, during his examination of Gaffney, Dr. Lichtenstein noted Gaffney's complaints about numbness on the right side of his face and sensitive and bleeding gums. Def.'s L.R. 56(a)1 ¶ 17 [ECF No. 34-2]; Pl.'s Decl. L. ¶ 32, Medical Records [ECF No. 40] at 14, Ex. 5 (Dental Record Entry – February 16, 2016). Dr. Lichtenstein observed that the area at the sight of the extraction of molar number three had healed and that the fold of skin near the extraction site appeared to be within normal limits. Def.'s L.R. 56(a)1 ¶ 18 [ECF No. 34-2]; Medical Records [ECF No. 40], at 14. Dr. Lichtenstein opined that Gaffney's complaints about numbness on the right side of his face required an evaluation by a specialist. *Id.*

On February 17, 2016, Dr. Lichtenstein submitted a request to the URC to approve a consultation with a specialist in order to evaluate Gaffney's complaints of right cheek numbness. Def.'s L.R. 56(a)1 ¶ 18 [ECF No. 34-2]; Pl.'s L.R. 56(a)2 ¶ 18 [ECF No. 39]; Exs. to Compl. at 17. On February 23, 2016, the URC approved the request. Def.'s L.R. 56(a)1 ¶ 19 [ECF No. 34-2]. On March 16, 2016, prison officials at Cheshire transported Gaffney to the University of Connecticut Health Center for an examination by a neurologist. *Id.* ¶¶ 19-20. The neurologist noted Anesthesia[2] to part of Gaffney's right cheek area, but no signs of Dysesthesia[3] or infection.

---

[2] Anesthesia – 1. Loss of sensation, usually by damage to a nerve or receptor. 2. Loss of the ability to feel pain, caused by administration of a drug or other medical intervention. *Dorland's Medical Dictionary for Health Consumers*. (2007). Retrieved September 24, 2018 from https://medical-dictionary.thefreedictionary.com/anesthesia.

[3] Dysesthesia – 1. Impairment of sensation short of anesthesia. 2. A condition in which

*Id.* ¶ 20; Medical Records [ECF No. 40], at 15, Ex. 6 (UCONN Consultation Form dated March 16, 2016). The neurologist opined that no treatment was necessary, but also noted that Gaffney might benefit from taking a supplement that contained Thiamine and Folate. *Id.*

On March 17, 2016, Gaffney met with Dr. Lichtenstein and reviewed the findings of the neurologist. Def.'s L.R. 56(a)1 ¶ 22 [ECF No. 34-2]. Dr. Lichtenstein referred Gaffney to Dr. Ruiz in response to the neurologist's suggestion that Gaffney could benefit from taking Thiamine and Folate. *Id.*

### III. Discussion

As a preliminary matter, the court notes Gaffney appears to raise two Eighth Amendment claims of deliberate indifference in his memorandum in opposition to the defendant's motion for summary judgment. He challenges Dr. Perelmuter's decision to extract molar number three rather than treating the condition of the molar by attempting to restore it with a filling and also challenges the manner in which Dr. Perelmuter extracted molar number three. *See* Pl's Mem. Opp'n Mot. Summ. J., [ECF No. 39] at 9; Gaffney Decl. ¶ 5. With regard to the second challenge, Gaffney claims that he experienced pain during the extraction and that shortly after the procedure the inside of his cheek felt like it had been sewn to his gum in the area of the extraction and the area of his right cheek felt numb.

The complaint, however, only includes allegations pertaining to the second claim of a violation of Gaffney's Eighth Amendment rights. *See* Compl. ¶¶ 7-32. Additionally, Gaffney has not attempted to amend his complaint to add the first claim asserted in the memorandum in

---

a disagreeable sensation is produced by ordinary stimuli; caused by lesions of the sensory pathways, peripheral or central. 3. Abnormal sensations experienced in the absence of stimulation. *Farlex Partner Medical Dictionary*. (2012). Retrieved September 24, 2018 from

8

opposition to the motion for summary judgment.[4] A plaintiff cannot amend his complaint in a memorandum in opposition to a motion for summary judgment. *See Lyman v. CSX Transportation Inc.*, 364 F. App'x 699, 701 (2d Cir. 2010) (affirming district court's determination that it should not consider claims raised for the first time in opposition to summary judgment) (citations omitted); *Allah v. Poole,* 506 F. Supp. 2d 174, 193 (W.D.N.Y. 2007) ("[A] memorandum of law or other motion papers are not proper vehicles by which to raise claims that are not asserted in the complaint.") (citations omitted); *Auguste v. Dep't of Corrections*, 424 F. Supp. 2d 363, 368 (D. Conn. 2006) (generally, a plaintiff "cannot amend his complaint in his memorandum in response to defendants' motion for summary judgment"). Thus, the court considers only the claim related to the manner in which Dr. Perelmuter extracted Gaffney's number three molar.

Defendant Perelmuter asserts two arguments in support of his motion for summary judgment. He contends that he was not deliberately indifferent to Gaffney's dental needs and that he is entitled to qualified immunity.

A. **Failure to State a Claim**

The Supreme Court has held that deliberate indifference by prison officials to a prisoner's

---

https://medical-dictionary.thefreedictionary.com/dysesthesia.

[4] On March 8, 2017, Gaffney filed a motion to amend the complaint. *See* Mot. Amend, [ECF No. 20]. In the proposed amended complaint attached to the motion, Gaffney sought to add the Commissioner of Correction and the Warden at Cheshire as defendants in addition to re-asserting his claims against Dr. Perelmuter. *See* Proposed Am. Compl., [ECF No. 20-1]. On March 13, 2017, the court denied the motion without prejudice because, pursuant to the Mandate of the Second Circuit, Dr. Perelmuter was the only remaining defendant in the action. *See* Order, [ECF No. 23]. The Second Circuit's Mandate did not remand the case to enable Gaffney to file an amended complaint, but to permit Dr. Perelmuter to respond to the allegations in the complaint. *See* Mandate, [ECF No. 18]. Gaffney has not filed any new motions for leave to amend the complaint.

serious medical need constitutes cruel and unusual punishment in violation of the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The Second Circuit has applied the deliberate indifference standard set forth in *Estelle* to claims of denials or delay in the treatment of dental needs. *See Harrison v. Barkley*, 219 F.3d 132, 136-37 (2d Cir. 2000) (applying deliberate indifference standard in *Estelle* to claim of untreated tooth cavity); *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (deliberate indifference to medical needs standard applicable to claim that prison dentist failed to property treat severe tooth decay). There is a subjective and an objective component to the deliberate indifference standard. *See Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006).

Objectively, the alleged deprivation of medical care must be "sufficiently serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). A "sufficiently serious" deprivation exists if the plaintiff suffers from an urgent medical condition that is degenerative or is capable of causing death or extreme or chronic pain. *See Brock v. Wright*, 315 F.3d 158, 163 (2d Cir. 2003) (citation omitted); *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (internal quotation marks and citations omitted). A medical or dental condition may not initially be serious, but may become serious because it is degenerative, and if left untreated or neglected for a long period of time, will "result in further significant injury or the unnecessary and wanton infliction of pain." *Harrison*, 219 F.3d at 136 (citations omitted). The Second Circuit has identified several factors that are highly relevant to the inquiry into the seriousness of a medical condition: "an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Chance*, 143 F.3d at 702 (internal quotation marks

10

and citation omitted).

Gaffney must also allege that, subjectively, the defendant prison official "act[ed] with a sufficiently culpable state of mind." *Id.* (internal quotation marks and citation omitted). Thus, the defendant must have been actually aware of a substantial risk that the inmate would suffer serious harm as a result of his or her actions or inactions and must have disregarded that risk. *See Salahuddin*, 467 F.3d at 279-80. The fact that a prison official did not alleviate a significant risk that he should have perceived, but did not, does not constitute deliberate indifference. *See Farmer*, 511 U.S. at 838.

### 1. Objective Prong – Serious Dental Need

Dr. Perelmuter argues that Gaffney did not suffer from a serious dental need at the time that he began to treat Gaffney in May 2015. He identifies Gaffney's dental condition as a cracked tooth and contends that it was not serious. In support of this contention, Dr. Perelmuter relies on a case from the United States District Court for the Eastern District of Wisconsin, *Poff v. Schettle*, 2017 WL 2728430 (E.D. Wis. June 23, 2017) (appeal filed May 24, 2018). That case, however, involved an inmate who had suffered a minor chip to one tooth while eating a meal in prison. *See id. at \*6* (noting that although "Poff's chipped tooth may have caused some pain . . . there is insufficient evidence that it could progress toward a more serious dental condition or that his pai[n] was unbearable" and concluding that "the undisputed facts show that Poff did not present an objectively serious medical need").

Gaffney, however, does not complain that molar number three was cracked, but that he had experienced chronic pain in that tooth, even after it had been filled twice. *See* Gaffney Decl. ¶ 2. Gaffney has filed copies of Inmate Requests dated from January 10, 2015 to May 16, 2015

11

documenting his complaints of pain regarding molar number three. *See* Medical Records [ECF No. 40] at 19, 22-25. In addition, he declares that that he had no alternative but to consent to the extraction of molar number three on June 23, 2015 in an attempt to alleviate the severe pain that he had been experiencing in that tooth. *See* Pl.'s L.R. 56(a)2 ¶ 8 [ECF No. 39].[5] The evidence submitted by Gaffney supports an inference that Gaffney suffered from chronic pain in molar number three at the time of his initial appointment with Dr. Perelmuter in early May 2015 and at the time of the extraction on June 23, 2015.

Dr. Perelmuter's declaration and his dental notes reflect that when he examined Gaffney on May 8, 2015, Gaffney complained about pain in molar number three and that his teeth were falling apart. Perelmuter Decl. ¶ 7 [ECF No. 34-3]; Def.'s L.R. 56(a)1 [ECF No. 34-2]; Ex. 2 [ECF No. 34-4] at 1. At that appointment, Dr. Perelmuter informed Gaffney that RCT[6] was not an option and that extraction of molar number three was the only available treatment that would alleviate the pain in that tooth. *Id.* ¶ 9; Def.'s L.R. 56(a)1 [ECF No. 34-2]; Ex. 2 [ECF No. 34-4] at 1. This evidence suggests that Gaffney's dental condition was painful and was worthy of comment and treatment at the time Dr. Perelmuter examined Gaffney on May 8, 2015.

The court concludes that the evidence submitted by both parties demonstrates that a jury could reasonably conclude that as of May 8, 2015, Gaffney suffered from a dental condition that was painful and worthy of comment and treatment, and as such constituted a serious dental need. *See Chance*, 143 F.3d at 702 (an objectively serious medical or dental condition might be

---

[5] The court notes that Pl.'s L.R. 56(a)2 was submitted as having been signed under penalty of perjury. Thus, it may also be considered to be a declaration in opposition to the motion for summary judgment.

[6] RCT is an abbreviation for Root Canal Therapy. *Segen's Medical Dictionary*. (2011). Retrieved September 24, 2018 from https://medical-dictionary.thefreedictionary.com/RCT.

demonstrated by "an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a . . . condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain."); *Dean v. Coughlin,* 623 F. Supp. 392, 404 (S.D.N.Y. 1985) (holding "dental needs-for fillings, crowns, and the like" accompanied by "pain and discomfort" constituted "serious medical needs as the law defines that term"). Accordingly, the motion for summary judgment is denied on the ground that Gaffney did not suffer from a serious dental need at the time Dr. Perelmuter examined him in May 2015 and performed the extraction of molar number three in June 2015.

### 2. **Subjective Prong - Deliberate Indifference**

Dr. Perelmuter argues that even if Gaffney's dental need was serious in May 2015, he was not deliberately indifferent to that need. Gaffney does not contend that Dr. Perelmuter failed to offer any treatment for his serious dental need. Rather, he argues that the treatment, extraction of the painful tooth, was performed by Dr. Perelmuter in a deficient manner. The complaint includes allegations that Dr. Perelmuter failed to allow sufficient time to perform the extraction of molar number three; the tooth broke during Dr. Perelmuter's attempt to extract it, leaving three pieces in the tooth socket; Dr. Perelmuter slipped three times while using a dental tool to remove/extract the remaining pieces of the tooth; Dr. Perelmuter did not provide Gaffney with sufficient medication to alleviate his pain during the extraction procedure; and Dr. Perelmuter improperly sutured the inside of Gaffney's cheek to his gum line after extracting the tooth. *See* Compl. ¶¶ 8-19. Gaffney claims that he continued to suffer numbness in his right cheek area even after the Novocaine wore off. *See id.* at ¶ 19.

Dr. Perelmuter argues that, at most, Gaffney's allegations constitute negligence or dental

malpractice. In response to the motion for summary judgment, Gaffney contends that Dr. Perelmuter knew or should have known that ten minutes was an insufficient amount of time to extract his tooth, but instead of re-scheduling the extraction for another day, Dr. Perelmuter hurried to complete the procedure and "botched" the extraction.

It is well-established that an inmate does not have a right to the medical or dental treatment of his or her choice. *See Hill v. Curcione,* 657 F.3d 116, 123 (2d Cir. 2011) ("It has long been the rule that a prisoner does not have the right to choose his medical treatment as long as he receives adequate treatment.") (citation omitted); *Chance*, 143 F.3d at 703 ("So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation.") In addition, a difference of opinion between an inmate and medical or dental professional does not in and of itself amount to deliberate indifference. *See Bolden v. Cty. of Sullivan*, 523 F. App'x 832, 833 (2d Cir. 2013) ("Indeed, we have held that a disagreement with the type of medical care provided is insufficient to state a constitutional claim; 'the essential test is one of medical necessity and not one simply of desirability.'") (quoting *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986)); *Valdes v. Fischer*, 2010 WL 5638611, at *7 (N.D.N.Y. Dec. 7, 2010) ("Any complaints Valdes had about the whether he should be referred to a specialist or receive additional x-rays of his mouth constitute no more than a disagreement in his treatment. Such disagreements, without more, are insufficient to state an Eighth Amendment violation.") (citation omitted), *report and recommendation adopted*, 2011 WL 239808 (N.D.N.Y. Jan. 24, 2011); *Sonds v. St. Barnabas Hosp. Corr. Health Servs.,* 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001) ("[D]isagreements over medications, diagnostic techniques[,] ... forms of treatment, or the need for specialists or the timing of their

intervention, are not adequate grounds for a Section 1983 claim.").

Negligence or medical malpractice claims are not cognizable under the Eighth Amendment. *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (observing that showing of medical malpractice is insufficient, on its own, to establish deliberate indifference). Thus, "not every lapse in prison medical care will rise to the level of a constitutional violation." *See Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003). In certain situations, however, "instances of medical malpractice may rise to the level of deliberate indifference, namely, when the malpractice involves culpable recklessness, i.e., an act or failure to act by the prison doctor that evinces a conscious disregard of a substantial risk of serious harm." *Hathaway*, 99 F.3d at 553 (internal quotation marks and citation omitted).

Dr. Perelmuter contends that he provided extensive treatment for Gaffney's dental condition and that prior to the extraction of Gaffney's molar, Gaffney signed a form, consenting to and acknowledging the risks of, the extraction procedure, including nerve damage from the anesthesia. Dr. Perelmuter argues that there is no evidence to support any allegation that he disregarded a substantial risk of serious harm to Gaffney and that Gaffney's allegations of negligence or malpractice should be dismissed because they do not constitute deliberate indifference to a serious dental need.

Gaffney's contention that Dr. Perelmuter knew or should have known that he could not perform the extraction in a ten-minute time period does not state a claim of deliberate indifference on the part of Dr. Perelmuter. Rather, the allegation is a claim that Dr. Perelmuter was negligent or careless in failing to realize or know that he could not complete the extraction process within ten minutes. *See Thousand v. Wrest*, 2016 WL 3477242, at *17 (W.D.N.Y. June

15

27, 2016) ("To begin with, Plaintiff does not specifically allege that Crowley acted with deliberate indifference, or with any particular animus toward him. Instead, the Complaint contends only that Crowley "knew or should have known [that he had] serious medical needs," which is a negligence standard.")

With regard to Gaffney's allegation that Dr. Perelmuter jabbed him in the cheek with a dental instrument three times during the extraction procedure and failed to provide any pain medication or other treatment to manage his pain symptoms, Dr. Perelmuter argues that this allegation does not rise to the level of wanton infliction of unnecessary pain or culpable recklessness because he initially gave Gaffney an injection of Novocaine, and the fact that Gaffney may have experienced pain during a dental procedure does not constitute a serious risk of substantial harm. Gaffney does not dispute that Dr. Perelmuter gave him an injection of Novocaine before the procedure. *See* Gaffney Decl. ¶ 8. He contends, however, that he experienced pain despite the Novocaine when Dr. Perelmuter jabbed him with a dental instrument on the inside of his right cheek as he attempted to remove pieces of molar number three. *See id.* ¶ 11. Although Gaffney declares that Dr. Perelmuter did not offer him another shot of Novocaine or other medication to alleviate his pain, he does not indicate that he informed Dr. Perelmuter that he was in pain after the first, second or third time that Dr. Perelmuter jabbed his cheek or that he requested additional Novocaine or some other medication to treat his pain. *See id.* ¶ 12. In addition, Gaffney's dental records reflect that immediately following the extraction procedure, Dr. Perelmuter prescribed medication to alleviate his pain. *See* Def.'s L.R. 56(a)1 [ECF No. 34-2]; Ex. 2 [ECF No. 34-4] at 1.

Gaffney declares that after the extraction procedure he continued to suffer pain in the area

16

where Dr. Perelmuter jabbed him with the dental tool. *See* Gaffney Decl. ¶ 8. Gaffney claims that he submitted an Inmate Request addressed to Dr. Perelmuter on June 24, 2015. *Id.* According to Gaffney, he did not receive a response to this request. *Id.* Gaffney has not provided any evidence of this Inmate Request or that Dr. Perelmuter received the request.

On June 30, 2015, Dr. Perelmuter removed the sutures from the area of the extraction. *See* Def.'s L.R. 56(a)1 [ECF No. 34-2]; Ex. 2 [ECF No. 34-4] at 1. Gaffney does not indicate that he sought pain medication at that time. *See id.*; Gaffney Decl. ¶ 17. Dr. Perelmuter informed Gaffney that the extraction area was healing, would continue to heal and that he would feel better soon. *See id.* When Gaffney submitted an Inmate Request on July 28, 2015, he complained only about the fact that he thought that Dr. Perelmuter had sutured the inside of his cheek to his gum line in the area of the extraction and that his right cheek area felt numb. *See* Gaffney Decl., ¶ 18; Medical Records, [ECF No. 40] at 1. He did not indicate that he was experiencing pain in the area of the extraction. *See id.*

There are no allegations or evidence to suggest that Dr. Perelmuter intentionally sewed the inside of Gaffney's cheek to his gum line or caused his right cheek area to become numb. Furthermore, in response to Gaffney's complaints about the inside of his cheek having been sewn to his gum line, Dr. Perelmuter cut the attachment between the inside of his cheek and his gum line near the extraction site. *See* Def.'s L.R. 56(a)1 [ECF No. 34-2]; Ex. 2 [ECF No. 34-4] at 1. When Gaffney again complained about this condition or sensation, Dr. Perelmuter used a scalpel to cut the attachment between the inside of his cheek and his gum line near the extraction site. *See id.* Ex. 2 [ECF No. 34-4] at 4. Dr. Perelmuter also attempted to refer Gaffney to a neurologist with regard to his complaints of numbness in the area of his right cheek. *See id.* at 4-

17

5. The URC, however, denied the request. *See id.* at 5.

This evidence of the conduct of Dr. Perelmuter during the seven-month period following the extraction procedure does not constitute an intentional disregard for the plaintiff's dental or medical health. *See Warren v. Cheverko*, 2018 WL 1399200, at *4 (S.D.N.Y. Mar. 19, 2018) (concluding that evidence reflecting prompt responses to inmate's medical concerns regarding request for partial dentures and timely and adequate consideration of grievances and appeals did not demonstrate deliberate indifference, recklessness or a knowing disregard of an excessive risk of harm) (appeal filed Apr. 24, 2018); *Martinez v. Ravikumar*, 616 F. Supp. 2d 455, 459 (S.D.N.Y. 2009), *amended* (May 15, 2009) ("At most, Martinez alleges that Ravikumar was negligent in his performance of the surgery [when he hit a nerve in her leg before he closed the incision which resulted "in permanent nerve damage, scarring, and difficulty in walking"] and subsequent examinations. Such allegations do not give rise to a valid claim of medical mistreatment under the Eighth Amendment."); *Ramos v. Artuz*, 2003 WL 342347, *9 (S.D.N.Y. Feb. 14, 2003) (finding that "a course of treatment [that] is unsuccessful does not even establish medical malpractice.... A fortiori, it cannot support a finding of deliberate indifference since deliberate indifference requires a level of culpability beyond malpractice.").

Although the conduct of Dr. Perelmuter, in neglecting to provide additional Novocaine or other measures to alleviate Gaffney's pain from being jabbed with a dental instrument during the extraction, might constitute negligence or gross negligence, the conduct does not constitute an intentional disregard of a serious dental need or risk. *See McGowan v. Hulick*, 612 F.3d 636, 641-42 (7th Cir. 2010) (affirming dismissal of claim against dentist for botched extraction, including failure to provide sufficient Novocaine during procedure, as negligence or gross

18

negligence because no allegations suggested that dentist maliciously intended to cause prisoner pain or performed procedures in way he knew would create a substantial risk of serious complications*); Colon v. Cty. of Nassau*, 2014 WL 4904692, at *8–9 (E.D.N.Y. Sept. 26, 2014) (although inmate's allegations that prison dentist drilled his tooth without anesthesia "might [state] a claim under some other theory of liability," the allegations did not constitute "cruel and unusual punishment in violation of the Eight Amendment"); *Wesolowski v. Harvey*, 784 F. Supp. 2d 231, 233–34 (W.D.N.Y. 2011) ("At most, Wesolowski alleges that Dr. Harvey committed malpractice by offering limited or marginally delayed [dental] treatment options to plaintiff, which does not implicate the Eighth Amendment.").

Construing the evidence, including Gaffney's declarations, in the light most favorable to him, and drawing all reasonable inferences in his favor, as required on summary judgment, Gaffney has not raised an issue of genuine fact to demonstrate that the conduct of Dr. Perelmuter during the extraction of Gaffney's molar number three "evince[d] a conscious disregard of a substantial risk of serious harm" to his dental condition such that it rose to the level of culpable recklessness. *Hathaway,* 99 F.3d at 553. Negligence that would support a claim for medical malpractice, however, does not rise to the level of deliberate indifference and is not a cognizable claim under section 1983. *See Salahuddin*, 467 F.3d at 280; *Harrison*, 219 F.3d at 139. Because Gaffney has not met the subjective prong of the deliberate indifference standard, the motion for summary judgment is granted as to the deliberate indifference to dental needs claim against Dr. Perelmuter relating to the extraction of molar number three.

### B. **Qualified Immunity**

Dr. Perelmuter contends that he is entitled to qualified immunity because he acted with

objective reasonableness in response to Gaffney's dental condition.  Because the court has granted summary judgment on the ground stated above, it need not reach Dr. Perelmuter's qualified immunity argument.  Additionally, Gaffney does not address the qualified immunity argument.

**IV.     Conclusion**

Dr. Perelmuter's Motion for Summary Judgment, [**ECF No. 34**] is **GRANTED**.  The Clerk is directed to enter judgment for the defendant and close this case.

SO ORDERED at Bridgeport, Connecticut this __28th__ day of September, 2018.


　　　　　　　　　　　　　　　　　　 /s/ Stefan R. Underhill
　　　　　　　　　　　　　　　　　　STEFAN R. UNDERHILL
　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE